ALFRED L. CHESEBROUGH V. HAZEN S. PINGREE ET AL.

*Landlord and tenant—Lease—Destruction of buildings by fire—Statute of frauds—Principal and agent.*

1. Where the exclusive possession of land occupied by leased buildings is necessary to the enjoyment of the demise, the land passes as an incident.

2. A lease of land for more than one year, executed by an agent without written authority and delivered to the lessee, is void under the statute of frauds and is not validated by the after execution of a duplicate by the principal, of the existence of which the lessee has no knowledge.

Error to Wayne. (Reilly, J.)    Argued June 12, 1888. Decided November 28, 1888.

*Assumpsit* for rent.    Defendants bring error.    Reversed. The facts are stated in the opinion.

*Isaac Marston,* for appellants, contended:

1. Affidavits denying the execution of written instruments should be construed liberally, where they seem in good faith intended to raise the question of execution; citing *McCormick v. Bay City,* 23 Mich. 457; *Haight v. Arnold,* 48 Id. 512; *Wren v. McLaren,* Id. 197; *McRobert v. Crane,* 49 Id. 483; and the execution under this rule has reference to the actual making and delivering; citing *Burson v. Huntington,* 21 Mich. 430, 431; *Freeman v. Ellison,* 37 Id. 462.

2. The lease must be signed by the lessor; citing How. Stat. § 6179,.

6181; *Abel v. Munson*, 18 Mich. 312; *Maynard v. Brown*, 41 Id. 298; or by his agent, authorized in writing; citing *Palmer v. Williams*, 24 Id. 331; and a ratification must be in writing; citing Id. 333.

3. Leases void under the statute are void for every purpose; citing *Hillebrands v. Nibbelink*, 40 Mich. 646; How. Stat. p. 1601 (note).

4. Upon the question of the effect of the destruction of the buildings upon the lease, conceding its validity, counsel cited *Freeland v. Bush*, 1 Term Rep. 701; *Stockwell v. Hunter*, 11 Metc. 448; *Coogan v. Parker*, 16 Am. Rep. 679; *Winton v. Cornish*, 5 Ohio, 477; 2 Bac. Abr. Lease, "K;" 2 Black. Comm. 19; *Harrington v. Watson*, 50 Am. Rep. 465; *McMillan v. Solomon*, 42 Ala. 356; *Bank v. Boston*, 118 Mass. 125; *Ainsworth v. Ritt*, 38 Cal. 90; *Kerr v. Exchange Co.*, 3 Edw. Ch. 315; Taylor's Land. & Ten. § 520.

5. In all the common-law cases where the tenant was held liable, it does not appear that he made any effort to rescind the lease or surrender possession, and his liability was put upon this ground; citing *Coogan v. Parker*, 16 Am. Rep. 666, 674; but defendants disclaimed any possession or right thereto, and plaintiff afterwards offered to sell the property, and give immediate possession, and this was an acceptance of defendants' surrender; citing Taylor's Land. & Ten. § 514 (note), 515; *Murray v. Shave*, 2 Duer, 183; and a rescission may be implied from the acts and circumstances; citing Taylor's Land. & Ten. § 515; *Day v. Watson*, 8 Mich. 536.

6. Evidence of the landlord negotiating with third parties for a new letting is competent, upon the question of a surrender in fact; citing *Hill v. Robinson*, 23 Mich. 25; *Donkersley v. Levy*, 38 Id. 58; *Jacobson v. Miller*, 41 Id. 100; *Logan v. Anderson*, 2 Doug. 102, and cases cited.

7. Where the defense is directed at the very existence of a promise having legal force, it is admissible under the general issue; citing *Snyder v. Willey*, 33 Mich. 489; *Ingalls v. Eaton*, 25 Id. 32; *Berringer v. Iron Co.*, 41 Id. 307; *Kinnie v. Owen*, 1 Id. 250, 251.

*George W. Radford*, for plaintiff, contended:

1. The lease was a lease for years of the land covered by the buildings; citing *Allen v. Scott*, 21 Pick. 25; *Bacon v. Bowdoin*, 22 Id. 401; *Winton v. Cornish*, 5 Ohio, 477; *Rogers v. Snow*, 118 Mass. 118; *Hooper v. Farnsworth*, 128 Id. 487; *Gear v. Barnum*, 37 Conn. 229; *Ammidown v. Ball*, 8 Allen, 293; *Boston v. Richardson*, 13 Id. 146; *Winchester v. Hees*, 35 N. H. 43;

*Wilson v. Hunter*, 14 Wis. 683; *Bussman v. Ganster*, 72 Penn. St. 285; *Lanpher v. Glenn*, 33 N. W. Rep. 11.

2. The destruction of a building by fire does not cancel the tenant's liability to pay rent, where he has leased the whole building, and covenanted to pay rent for the term, without reservation; citing, in addition to cases before cited, *Fowler v. Bott*, 6 Mass. 63; *Kingsburry v. Westfall*, 61 N. Y. 356; *David v. Ryan*, 47 Iowa, 642; *Harris v. Heackman*, 17 N. W. Rep. 592; *Viterho v. Friedlander*, 7 Sup. Ct. Rep. 962; *Bussman v. Ganster*, 72 Penn. St. 289; Wood's Land. & Ten. § 451; Taylor's Land. & Ten. §§ 329, 375.

3. The case is taken out of the statute of frauds both by ratification and part performance, and there is no force in the claim that the lease was not executed and delivered; citing *Campau v. Lafferty*, 43 Mich. 429; *Hammon v. Hannin*, 21 Id. 381, and cases cited; Wood's Land. & Ten. § 133; *McIntyre v. Park*, 11 Gray, 102; *Holbrook v. Chamberlain*, 116 Mass. 161.

4. A surrender of a lease must be specially pleaded; citing Chit. Pl. 515; and in this case the proof of surrender was offered for the purpose of claiming a release from the covenants in a manner not provided in the lease, and was inadmissible under the general issue; citing *Rawlings v. Cole*, 67 Mich. 431; How. Stat. § 7363; *Miller v. Finley*, 26 Mich. 249; *Wheeler v. Curtiss*, 11 Wend. 654; *Bank v. Weed*, 19 Johns. 300; *Hollister v. Bender*, 1 Hill, 150; 1 Chit. Pl. 506.

LONG, J. This is an action of *assumpsit*, brought to recover rent under a written lease dated May 1, 1886, made by plaintiff to defendants, of certain property in Detroit. The plaintiff's declaration is upon the common counts in *assumpsit* and the covenants of the lease. Plea, general issue and affidavit denying the execution of the lease. At the trial the court directed a verdict for plaintiff for the amount claimed. Defendants bring error.

The defendants are partners under the firm name of Pingree & Smith, manufacturers of shoes. They had occupied the premises for a number of years prior to the making of the lease in question. During such prior tenancy the property was assigned to plaintiff through par-

tition proceedings, and he had been the owner three or four years.

This first leasing expired May 1, 1886. The lease in question was prepared by Mr. Radford, acting as the attorney for plaintiff, two copies exactly alike being drawn, both taken by Radford to the office of Pingree & Smith about May 1, 1886. The lease was signed " Pingree & Smith," by Mr. Bond, who was then a member of the firm. The other copy was signed, " A. L. Chesebrough, by Geo. W. Radford, his Attorney." Both copies, after being so signed, were left at the office of Pingree & Smith, with Mr. Bond, with the understanding that he was to keep them until Mr. H. S. Pingree returned from the East. A few days later one copy of the lease was delivered by Mr. Bond to Mr. Radford for A. L. Chesebrough, and Mr. Chesebrough signed his name to the copy left with Mr. Radford a day or two thereafter. The other copy was retained by Pingree & Smith, and not signed by Mr. Chesebrough, but was signed by Mr. Radford as attorney for Mr. Chesebrough.

The defendants remained in possession, and paid rent to the plaintiff, from and after May 1, 1886, up to and including the month of March, 1887, when the buildings were totally destroyed by fire, on March 30, 1887. The property has remained in the same condition as left by the fire up to the time of the trial.

The morning after the fire, March 31, 1887, Mr. Radford wrote the defendants as follows:

" Some time since one of your company stated to me that if the Chesebrough land was vacant you would be more willing to purchase than with the buildings on it. Last night's fire has accomplished the change desired, and I am now ready to talk sale of site to you."

No reply was made to this by the defendants. Defendants had paid rent up to and including the month of

March, 1887, and the rent for April became due, according to the lease, May 1, 1887. On May 4 Mr. Radford again wrote the defendants:

"Please inform me of the earliest time you can talk over the subject of buying the Chesebrough lot. In case you do not care to buy at all, let me know that, also, and what, if any, adjustment you wish to make as to the unexpired lease."

No reply was made to this communication by the defendants, but they, on May 11, 1887, wrote the plaintiff:

"The store buildings Nos. 11, 13, 15, and 17 Woodbridge street west, in the city of Detroit, under lease from you, dated May 1, 1886, having been totally destroyed by fire on the 30th day of March last past, and we being unable, therefore, to have, and not having or claiming, the use, occupation, or possession of the land, or any part thereof, upon which said buildings were situated, under said lease, and having removed all and singular our property, except one boiler, from off the land upon which such leased premises stood, we consider our liability under said lease at an end," etc.

Mr. Radford replied to this, claiming that the lease was not extinguished by reason of the total destruction of the buildings.

It appeared upon the trial that on June 8, 1887, the plaintiff made the following written proposition to one Richard Tregaskis for sale of the property.

"Richard Tregaskis is hereby given the refusal to buy the lot, 80 by 100 feet, on the south-east corner of Woodbridge and Griswold streets, for the sum of $24,000 cash, until Saturday noon, June 11, 1887.

"[Signed] GEO. W. RADFORD, for the owner.

"Also all material, such as brick, iron pillars, foundation, and stone copings, etc., boiler and engine excepted, and can commence to build as soon as papers are completed. [Signed] A. L. CHESEBROUGH."

There was no evidence given on the trial that Mr. Tregaskis made any reply to this offer of sale, or in any

manner indicated that he accepted such proposition, and no sale was in fact made.

On July 8, 1887, plaintiff made written demand for the payment of the rent for April, May, and June, 1887, which is the portion of the rent sought to be recovered in this suit, and for the amount of which the court below directed a verdict for the plaintiff.

It is insisted by counsel for defendants—

1. That the proposition made by the plaintiff to Richard Tregaskis for the sale of the premises in question was an acceptance of the surrender made by defendants.

2. That the lease was of the buildings only, and not of the lands upon which the buildings were situate.

3. That the buildings having been destroyed by fire, their liability for rent ceased.

4. That, the lease not being signed by Mr. Chesebrough, and Mr. Radford not having authority in writing to sign the same, it was void under section 6179, How. Stat.

The buildings covered the whole land. The lease was for those certain store buildings known as Nos. 11, 13, 15, and 17 Woodbridge street west, said stores having a frontage of 80 feet on Woodbridge street and 110 feet on Griswold street; together with all and singular the benefits, liberties, and privileges to said premises belonging, etc.

We think the lease was for the whole premises, and not of the buildings alone. It is evident that the exclusive possession of the land was necessary to the enjoyment of the demise, and in such cases the land passes as an incident to the demise. *Allen v. Scott*, 21 Pick. 25; *Bacon v. Bowdoin*, 22 Id. 401; *Winton v. Cornish*, 5 Ohio, 477; *Hooper v. Farnsworth*, 128 Mass. 487; *Lanpher v. Glenn*, 33 N. W. Rep. 11. As we view the case, however, this question does not become important.

On the trial it appeared that the lease held by defendants was never signed by plaintiff, and the fact that the

duplicate retained by Mr. Radford was signed by the plaintiff never came to the attention of the defendants until the time of the trial. It also appeared that Mr. Radford had no authority in writing from the plaintiff to sign the lease left with Mr. Bond for the defendants.

How. Stat. § 6179, provides:

"No estate or interest in lands other than leases for a term not exceeding one year, nor any trust or power over or concerning lands or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by some person thereunto by him lawfully authorized by writing."

From the fact that Mr. Radford had no authority in writing, signed by Mr. Chesebrough, the lease signed by him as attorney for Mr. Chesebrough, and left with the defendants, had no force, and the defendants could have asserted no rights under it against the plaintiff. Mr. Radford had authority to lease the property, and his acts would have been binding upon Mr. Chesebrough for the leasing for one year; but the statute above cited is express that no interest in lands, other than leases for a term not exceeding one year, can be created, unless the agent be authorized by writing to convey such interest. This statute covers every case where an interest in land is to to be divested by act of the party. *Whiting v. Butler*, 29 Mich. 144.

. The fact that the duplicate retained by Mr. Radford was afterwards signed by the plaintiff does not aid the plaintiff's case. That duplicate was never delivered to the defendants, and they had no knowledge of its existence until at the time of the trial. It is not like the case of *Campau v. Lafferty*, 43 Mich. 429 (5 N. W. Rep. 648), where each party signs the lease delivered to the

other, and does not sign the one he keeps. Here Mr. Chesebrough never delivered the lease signed by himself, and though Mr. Radford signed it as his attorney, he was not authorized in writing. The case comes clearly within the statute.

The defendants did not take possession under this lease. They were already in possession, and had been for a long time, paying the same rent in the same manner. It is contended by the plaintiff that the destruction of the buildings does not terminate the lease. The lease shows that it is a covenant to pay rent for the full term of three years, without any provision for its termination in case of fire. We need not, however, discuss this question. As we have already said, the lease in question was not one which could in any manner bind the defendants for the term, and the defendants' possession of the premises, or continuance in possession, was not dependent upon the written lease. Whatever rights the defendants had in the premises grew out of their former holding, and the permission to remain in, granted by Mr. Radford, as agent for the plaintiff. It was such a holding as the plaintiff might terminate at any time with proper notice, and could not in any event extend beyond one year without plaintiff's consent.

The rent was payable in monthly installments of $266.67. It was paid in full to and including the month of March, 1887. The buildings were destroyed on March 30, 1887. We think, the destruction being total, that the tenancy terminated at that time under the circumstances here stated. What the effect would have been upon the question of the continuance of the tenancy had the lease been a valid one for three years, with no provision for its termination in case of total destruction of the buildings by fire, we do not determine. It is sufficient to say that, there being no written lease effective and valid between

the parties, their rights are determined under the circumstances of a parol leasing, which could not extend beyond one year, and which could have been terminated by proper notice, the rent being payable in monthly installments.

The judgment of the court below must be reversed, with costs, and a new trial ordered.

The other Justices concurred.